UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NICOLE JOHNSON, Parent, and N.S., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>BOSTON PUBLIC SCHOOLS and MASSACHUSETTS BUREAU OF SPECIAL EDUCATION APPEALS, et al.,<br><br>Defendants. | Civil Action No. 1:15-cv-10026-ADB |

# **MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS**

BURROUGHS, D.J.

This action commenced in January 2015. Plaintiffs filed Part One of the Bifurcated Complaint on November 13, 2015, and Part Two on December 22, 2015. [ECF Nos. 71, 93]. Part One consisted of Plaintiffs' appeal of the decision by the Bureau of Special Education Appeals ("BSEA") hearing officer, pursuant to the Individuals with Disabilities Education Act ("IDEA"). [ECF No. 71]. Part Two alleges various claims under the Rehabilitation Act of 1973, the Americans with Disabilities Act ("ADA"), and constitutional violations. [ECF No. 93]. On August 17, 2016, the Court granted Defendant Boston Public Schools' ("BPS") Motion for Summary Judgment on all counts of Part One of the Bifurcated Complaint. [ECF No. 132]. On February 1, 2017, the Court granted Defendant BSEA's motion to dismiss Part Two of the Bifurcated Complaint, and denied Defendant BPS's motion to dismiss. [ECF No. 149].[1]

BPS filed a second motion to dismiss Part Two of the Bifurcated Complaint on March 13,

---

[1] Plaintiffs did not name Boston Children's Hospital ("BCH") or any individual doctors as defendants in either part of the Bifurcated Complaint, and on March 30, 2016, the Court denied Plaintiffs' motion to amend the complaint to add BCH and the doctors as defendants. [ECF No.

2017. [ECF No. 158]. The Court issued an order on March 7, 2018 describing possible deficiencies in Part Two of the Bifurcated Complaint which BPS had not initially addressed. [ECF No. 168]. BPS filed a motion to amend its motion to dismiss on March 20, 2018. [ECF No. 170]. Plaintiffs were required to submit any additional briefing on the issues raised in the Court's March 7 order by March 23, 2018, but Plaintiffs have not filed any additional materials.

BPS's motion to amend [ECF No. 170] and its second motion to dismiss Part Two of the Bifurcated Complaint [ECF No. 158] are both granted.

I.   DISCUSSION

First, BPS argues that all counts in Part Two of the Bifurcated Complaint must be dismissed because the factual findings made by the BSEA hearing officer in the Administrative Record indicate that Plaintiffs are not entitled to relief. Even after the submission of BPS's additional briefing, however, the Court is not persuaded that it may consider the hearing officer's findings at the motion to dismiss stage. BPS cites two new cases in support of its argument, but neither clarifies the issue. In Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000), the court determined that it could consider advertising copy text in evaluating a motion to dismiss, which was key to the question of whether the plaintiff stated a claim for false advertising, while in Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991), the material at issue consisted of a stock purchase agreement, an offering memorandum, and a warrant to purchase shares. There is no indication in either Clorox or Cortec that the parties disputed the validity or accuracy of these documents. In contrast, here, Plaintiffs object to the factfinding and conclusions made by the Hearing Officer. Therefore, the Court will

---

127]. The Court dismissed Defendants Chang and O'Brien on March 7, 2018. [ECF No. 168]. Thus, at this time, the remaining defendants are BPS, Jeremiah Ford, and Marci Goldowsky (or Goldowski).

not consider the hearing officer's factual findings at this time.

Next, BPS argues that all of the claims in Part Two of the Bifurcated Complaint are subject to dismissal for lack of exhaustion. The IDEA requires aggrieved individuals to exhaust their administrative remedies prior to filing a lawsuit. Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 59 (1st Cir. 2002) (citing 20 U.S.C. § 1415(l)). Moreover, this "exhaustion principle 'applies even when the suit is brought pursuant to a different statute so long as the party is seeking relief that is available under subchapter II of IDEA.'" Id. (quoting Rose v. Yeaw, 214 F.3d 206, 210 (1st Cir. 2000)). The statute explicitly notes that claims brought pursuant to the ADA and the Rehabilitation Act seeking relief available through the IDEA are subject to the exhaustion requirement. 20 U.S.C. § 1415(l). Courts have interpreted the exhaustion requirement to apply to § 1983 claims as well. See, e.g., Frazier, 276 F.3d at 59, 64; Doucette v. Jacobs, No. CV 15-13193-JGD, 2018 WL 457173, at *12–13 (D. Mass. Jan. 17, 2018), appeal docketed, No. 18-1160 (1st Cir. Mar. 2, 2018). Furthermore, exhaustion is required where plaintiffs seek money damages, Frazier, 276 F.3d at 60–64, and where a parent alleges that a school retaliated against her for advocating on behalf of her child. Weber v. Cranston Sch. Comm., 212 F.3d 41, 47, 51–52 (1st Cir. 2000).

The exhaustion requirement only applies where a plaintiff seeks relief from the denial of a free appropriate public education ("FAPE"); claims that fall outside the scope of the FAPE are not subject to the exhaustion requirement. See Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 752 (2017). If a lawsuit alleges the denial of a FAPE, "the plaintiff cannot escape [the exhaustion requirement] merely by bringing her suit under a statute other than the IDEA . . . ." Id. at 754. To make this determination, "a court should look to the substance, or gravamen, of the plaintiff's complaint." Id. at 752. The Supreme Court has identified questions that can help illuminate this

issue. "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library?" Id. at 756. "[S]econd, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" Id. When the answer to one or both of these questions is no, "then the complaint probably does concern a FAPE, even if it does not explicitly say so." Id. In addition, "a court may consider [whether] a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the Act's remedies before switching midstream." Id. at 757. "A plaintiff's initial choice to pursue [administrative procedures] may suggest that [he or] she is indeed seeking relief for the denial of a FAPE—with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy." Id.

Here, all of the claims in Part Two of the Bifurcated Complaint are subject to the administrative exhaustion requirement. None of the claims in Part Two except Count VII (as discussed infra) are framed as an appeal of the administrative decision, and Plaintiffs have not asserted in the complaint or in any other documents that they raised these claims before the BSEA. Instead, Part One of the Bifurcated Complaint encompassed Plaintiffs' appeal of the BSEA decision. [ECF No. 71]. As the Court has already entered summary judgment as to Part One [ECF No. 132], the Court only considers the claims in Part Two to the extent that they do not duplicate the claims already raised in Part One.

Counts I–V of Part Two of the Bifurcated Complaint allege various violations of the ADA and the Rehabilitation Act,[2] and Counts VI–VII allege constitutional violations. First, Count I asserts that BPS staff did not ensure that the FM system called for in Student's

---

[2] Count V does not state a cause of action, but given the context, it appears to be brought under the ADA and the Rehabilitation Act.

4

Individualized Education Program ("IEP") was functioning properly, and Count V asserts that BPS instructed Student in American Sign Language ("ASL"), despite the fact that his IEP stated he would be instructed in spoken English. In addition, Count VI asserts that instructing Student in ASL, in contravention of the terms of the IEP, was a violation of the mother's Fourteenth Amendment rights. Since these counts challenge the implementation of Student's IEP, they plainly seek relief available through the IDEA and are thus subject to the exhaustion requirement. 20 U.S.C. § 1415(l). To the extent that these claims are not duplicative of claims already raised in Part One of the Bifurcated Complaint, they were not exhausted, and thus must be dismissed.

Next, Count II alleges that BPS incorrectly mapped the processor in Student's cochlear implant, and Count III asserts that BPS discriminated against Student by failing to evaluate him for mainstreaming, instead keeping him in a special education setting. While neither of these counts explicitly mention Student's IEP, they appear to be premised on the requirements set forth in his IEP. Applying the test set forth in Fry, 137 S. Ct. at 756, the Court concludes that the claims concern the provision of a FAPE. First, as to whether Plaintiffs could have brought the same claims if the conduct occurred at another public facility, such as a theater or library, Fry, 137 S. Ct. at 756, these types of public facilities would not be required to correctly map the processor in a visitor's cochlear implant, and the concept of "mainstreaming" is not applicable outside of the educational context. Second, as to whether an adult at the school could press the same grievance, id., again the answer is no, as the school is not required to map an adult's processor, and mainstreaming only applies to students. Further, Plaintiffs previously invoked the IDEA's formal procedures to handle disputes concerning Student's processor and their request that Student be mainstreamed. See [ECF No. 132 at 3–15]. The Court already granted summary

5

judgment where those claims were properly raised before the BSEA and appealed. To the extent that the claims in Count II and III of Part Two of the Bifurcated Complaint do not duplicate matters raised in Part One, they were not exhausted, and must be dismissed.

In Count IV, Plaintiffs assert that BPS staff retaliated against the mother for advocating on behalf of Student. As set forth in Weber, 212 F.3d at 47, 51–52, this type of claim is also subject to IDEA's exhaustion requirement. Count VII asserts that the BSEA hearing officer made an adverse credibility determination against the mother due to the mother's political beliefs, in violation of her First Amendment rights. Since this claim is based on conduct that took place in the administrative hearing, and a similar claim was asserted in Part One of the Bifurcated Complaint [ECF No. 71 at 5], as an appeal of the agency decision, Count VII is duplicative of an issue that already was, or should have been, raised in the administrative proceeding and subsequent appeal. Furthermore, BSEA has been dismissed as a defendant, and there is no apparent basis to assert this claim against BPS where the only allegation pertaining to BPS is that the hearing officer acted "at the instigation" of BPS's attorney. Thus, Count VII is also dismissed for failure to state a claim against BPS.

Lastly, Count VI is subject to dismissal for two reasons in addition to the failure to exhaust the claim. Count VI alleges that BPS violated the mother's Fourteenth Amendment right to "raise her child as she see[s] fit" because BPS instructed Student in sign language, despite the mother's objections. Plaintiffs do not assert that this decision was made according to a policy or practice established by BPS. Under the rule articulated in Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), "a municipality may not be held liable under a theory of *respondeat superior* for an employee's constitutional violation," but "it may be held liable when 'execution of [the municipality's] policy or custom . . . inflicts the injury' and is the 'moving

force' behind the employee's constitutional violation." Saldivar v. Racine, 818 F.3d 14, 20 (1st Cir. 2016) (quoting Monell, 436 U.S. at 694). Although the complaint alleges that Defendants Ford and Chang are "policy makers for the City," and asserts that they "should be compelled to develop an institutional policy . . . for parents who are concerned about the language or mode of instruction," this is a request for relief, not a factual allegation. Furthermore, even if the complaint had alleged that the decision to instruct Student in sign language was made pursuant to a policy or custom of BPS, the Fourteenth Amendment right "to direct the upbringing and education" of one's children does not "include the right to dictate the curriculum at the public school to which parents have chosen to send their children." Pisacane v. Desjardins, 115 F. App'x 446, 450 (1st Cir. 2004).[3]

## II.    CONCLUSION

Accordingly, Defendant BPS's motion to amend [ECF No. 170] is GRANTED, and BPS's Second Motion to Dismiss Part Two of the Bifurcated Complaint [ECF No. 158] is GRANTED. In addition, Defendants Ford and Goldowsky (or Goldowski) are dismissed as defendants due to Plaintiffs' failure to effect proper service.

**SO ORDERED.**

March 28, 2018                                    /s/ Allison D. Burroughs
                                                  ALLISON D. BURROUGHS
                                                  U.S. DISTRICT JUDGE

---

[3] In the Court's March 7 order, the Court noted that it appeared Defendants Ford and Goldowsky (or Goldowski) had not yet been properly served, and required Plaintiffs to file proof of service by March 23, 2018 to avoid dismissal. [ECF No. 168 at 7 n.4]. Plaintiffs have not filed any additional proof of service, so Defendants Ford and Goldowsky (or Goldowski) must be dismissed. Fed. R. Civ. P. 4(m).